IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

ROBERT McINTOSH  #795107          §

v.                                §          CIVIL ACTION NO. 6:09cv444

WARDEN RAYMOND THOMPSON,          §
ET AL.

MEMORANDUM ADOPTING REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND ENTERING FINAL JUDGMENT

The Plaintiff Robert McIntosh, proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights.  This Court ordered that the matter be referred to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

McIntosh complained of the confiscation of his property, including legal, educational, and personal materials.  He stated that this property included 16 boxes of business records, as well as civil and criminal trial transcripts and divorce records.  He signed confiscation papers for a total of 19 boxes in January of 2008, and was told that he would get 60 days in which to dispose of the property.  He was later told that he would have an extension of two to four weeks; however, in May of 2008, he was told that his property had been destroyed.

McIntosh explained that he was filing a civil lawsuit against an attorney named David Ellis and a malpractice lawsuit against an attorney named David Leeper.  He had also filed a state habeas petition in 2002, and was trying to amend this petition to add claims regarding ineffective assistance of counsel.  He attached o his complaint an inventory list of the property taken; this list had 260 numbered entries on it, although some of these entries were blank.  The items included a number of

1

listings of properties and their prices, some of which were owned by McIntosh and others of which were owned by other persons or by corporations; educational certificates; corporate charters or certificates; copies of letters from McIntosh; lists of attorneys and private investigators; documents from the mid-1990s referencing criminal charges, documents referencing civil claims brought against McIntosh, some dating back to the mid-1990s; addresses of persons, businesses, and religious organizations; a court opinion involving McIntosh; and files on criminal histories for persons labeled as "state witnesses."

After review of the pleadings, the Magistrate Judge issued a Report recommending that the lawsuit be dismissed. The Magistrate Judge observed that McIntosh possessed a "staggering" amount of legal material, including 16 boxes which were taken in October of 2007, three more which were taken in February of 2008, five which were sent to the Court, one which was designated for pickup by a visitor, one or two more which were taken later. In a grievance filed in June of 2009, McIntosh talks about having legal papers "scattered about his cell" at that time. The Magistrate Judge said that the fact that McIntosh was not allowed to keep such large amounts of property in his cell was not a constitutional violation.

The Magistrate Judge also rejected McIntosh's contention that the confiscation of all of this material amounted to a denial of access to court. In Lewis v. Casey, 116 U.S. 2174, 2179-81 (1996), the Supreme Court held that the right of access to court did not guarantee to prisoners the right to "transform themselves into litigating engines," and that the impairment of litigating capacity other than for claims involving the validity of conviction or the conditions of confinement was simply an incidental consequence of conviction and incarceration.

Thus, the Magistrate Judge reasoned, any impairment of McIntosh's capacity to litigate claims regarding his free-world property, his divorce, or his civil actions against attorneys was the result of a facially neutral regulation governing the amount of property he could have in his cell, and was thus an incidental consequence of his conviction.

With regard to McIntosh's state habeas petition, the Magistrate Judge recognized that such a petition involves the validity of his conviction. However, the Magistrate Judge observed that McIntosh had ample time in which to amend his petition during the six years between the time that he filed it and the time that his property was confiscated, and that McIntosh had failed to show that the claims which he wished to raise in his proposed amendment were arguable or non-frivolous. One of the claims which McIntosh says that he wanted to add was an assertion that counsel failed to "properly voir dire the venire members and ask proper questions," which he says would have revealed that seven venire members could not consider probation, but he did not explain how he knew this if his attorney did not ask questions so as to elicit this information. In addition, the Magistrate Judge said, the mere recitation of the claim sought to be raised did not show that the claim was arguable or non-frivolous. The Magistrate Judge therefore concluded that McIntosh had failed to show a violation of his constitutional right of access to court, and recommended that the lawsuit be dismissed.

McIntosh filed objections to the Magistrate Judge's Report on January 24, 2011. In his objections, McIntosh reiterates that he is complaining about the confiscation of documents relating to his state habeas petition. He says that the Magistrate Judge was on notice from the testimony at the evidentiary hearing that McIntosh has to rely on others to do legal work for him because he knows nothing of the law. According to McIntosh, this is why he was still trying to amend his state habeas petition five years after it was filed.

McIntosh goes on to say that he did not claim that his attorney asked no questions of the venire; instead, he says, counsel elicited the information that these seven jurors could not consider probation for all of McIntosh's offenses combined, but failed to ask whether they could consider probation for each charge individually.

McIntosh points to testimony from Warden Baker at the evidentiary hearing, to the effect that "there's really no limit on legal boxes as long as they can show that they're involved in active cases." He says that because his state habeas petition was still active, he should have been afforded proper

storage for this legal work and not have it be subject to confiscation. He points to several cases in which he says that summary judgment was denied to prison officials regarding a prisoner's claim that materials affecting pending litigation were taken. McIntosh also says that the other legal boxes contained materials concerning his criminal conviction, and objects to the Magistrate Judge's conclusion that he was not entitled to file litigation regarding property, divorce, or civil malpractice actions; he says that the case law simply says that the prison officials are not required to provide him with the tools to do so.

Next, McIntosh complains that the Magistrate Judge failed to address his complaint that Warden Thompson failed to train and supervise his officers not to destroy legal work and not to deny access to the Court, and that the Magistrate Judge applied the wrong legal standard in recommending dismissal of his lawsuit. He attaches an opinion from the Northern District of Texas in a case called McCullough v. Johnson, civil action no. 7:05cv58 (N.D.Tex., November 14, 2007); however, the civil docket sheet in that cause shows that January 14, 2009, the opinion was withdrawn by the court by reason of a settlement between the parties.

McIntosh's objections fail to show that he suffered any cognizable harm as a result of the confiscation of the property. As the Magistrate Judge observed, the Fifth Circuit has upheld TDCJ's space limitations against challenges by inmates who, like McIntosh, had substantial quantities of legal work. Long v. Collins, 917 F.3d 3, 4 (5th Cir. 1990). McIntosh stated that he had researched the issue of ineffective assistance of counsel for four years, two to four hours a day, five days per week; this provided him with ample opportunity to amend his petition prior to the confiscation of his legal papers.

In addition, McIntosh has not shown that the claims which he wished to raise were even arguably meritorious. He originally stated that his attorney at trial failed to ask questions which would have elicited the fact that seven jurors could not grant probation, but in his objections, he concedes that his attorney asked this question about probation for all offenses, but failed to ask about probation for each offense individually. In Smith v. State, slip op. no. 03-07-00392-CR, 2009 WL

4

2058915 (Tex.App.-Austin, July 14, 2009, pet. ref'd), the Third Judicial District Court of Appeals rejected a claim of ineffective assistance of counsel for failing to challenge jurors for an inability to consider probation. The court stated as follows:

> Defense counsel's failure to question or challenge jurors both for probable bias "in regard to CPS activity" and for a possible inability to consider probation does not amount to conduct 'so outrageous that no competent attorney would have engaged in it.' Goodspeed v. State, 187 S.W.3d 390, 392 (Tex.Crim.App. 2005). The record does not support Smith's assertion that, in failing to challenge or engage in further questioning with these jurors on these subjects, his counsel acted outside the bounds of what a competent attorney would do.

As the Magistrate Judge explained, in order to pursue a claim of denial of access to court, the plaintiff must show that he suffered an actual injury and the claim must be alleged with sufficient clarity to show that it has some arguable merit; in other words, that the ability to pursue a non-frivolous, arguable legal claim was hindered by the defendants' actions. Here, McIntosh has not shown that the Defendants hindered his ability to pursue the claim, given that he had some four years in which to raise it prior to the confiscation of his property, nor that the claims which he wished to raise had arguable merit. While Smith is not dispositive of McIntosh's denial of access claim, it represents a case in which a claim of ineffective assistance of counsel, on the same or a very similar ground, was rejected, and McIntosh has offered nothing to show that his claims were in fact arguably meritorious. His objection on this point is without merit.

Next, McIntosh points to the Northern District's opinion in McCullough v. Johnson, but the docket of that cause reflects that the opinion was withdrawn by the court upon the finalization of a settlement agreement between the parties. As such, this withdrawn opinion lacks any precedential value.

McIntosh quotes Warden Baker as testifying that there is "no limit" on legal boxes as long as the inmate can show that these are involved in active cases. Whether or not this is an accurate statement concerning TDCJ policies and procedures, the question in the present case revolves around constitutional standards, not prison rules. The large quantity of materials taken from McIntosh did not all involve active cases, as McIntosh's inventory sheet makes clear. The Fifth Circuit has noted

that prisons have only limited storage space and so it is "highly dubious" that a facially neutral limitation on this space might in any way restrict a prisoner's exercise of constitutional rights, including the right of access to court. Long, 917 F.2d at 4; Guajardo v. Crain, 275 Fed.Appx. 290, 2008 WL 1790385 (5th Cir., April 17, 2008). McIntosh was aware that he had a substantial quantity of materials and only limited space in which to store them, and had the option of retaining only his state habeas paperwork and such other materials as may have been immediately necessary, rather than trying to store divorce paperwork, corporate charters, and information regarding ten-year-old claims. It was McIntosh's failure to be selective in the items which he chose to retain which led to the confiscation of his property; 19 boxes of materials clearly could not fit into the storage space allotted. His objection on this point is without merit.

Next, McIntosh complains that the Magistrate Judge failed to address a failure-to-train claim against Warden Thompson. Even assuming that this was error, McIntosh has failed to show harm. The Fifth Circuit has held that absent a supervisor's overt personal participation in the events giving rise to the claim, a plaintiff raising a claim of failure to train must show that the supervisor actually failed to train or supervise the subordinate official, a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights, and that the failure to train or supervise amounted to deliberate indifference. Mesa v. Prejean, 543 F.3d 264, 274 (5th Cir. 2008), citing Estate of Davis v. City of North Richland Hills, 406 F.3d 375, 381 (5th Cir. 2005). The Court went on to observe that proof of deliberate indifference generally requires a showing of more than a single instance of the lack of training or supervision causing a violation of constitutional rights. Mesa, 543 F.3d at 274, citing Burge v. St. Tammany Parish, 336 F.3d 363, 370 (5th Cir. 2003). In this regard, the Supreme Court has made clear that the deprivation suffered as a result of the alleged failure to train must be a constitutional one. Collins v. City of Harker Heights, Texas, 112 S.Ct. 1061, 1069 (1992).

In the present case, McIntosh has not shown an actual failure to train or supervise, nor that a constitutional deprivation was suffered as a result of any such failure. His objection on this point is without merit.

Finally, McIntosh cites the 1974 case of <u>Scheuer v. Rhodes</u>, 416 U.S. 232 (1974) as saying that when a federal court reviews the sufficiency of a complaint, the issue is not whether the plaintiff will ultimately prevail but whether he is entitled to offer evidence to support the claim. The correct standard in a frivolousness analysis is that set out by the Magistrate Judge, which is that a claim is frivolous where it lacks an arguable basis in law or fact. In this case, McIntosh's complaint lacked an arguable basis in law, and so the Magistrate Judge properly recommended that it be dismissed as frivolous. McIntosh's objections are without merit.

The Court has conducted a careful *de novo* review of the pleadings and testimony in this cause, including the Report of the Magistrate Judge and the Plaintiff's objections thereto. Upon such *de novo* review, the Court has concluded that the Report of the Magistrate Judge is correct and that the Petitioner's objections are without merit. It is accordingly

ORDERED that the Petitioner's objections are overruled and the Report of the Magistrate Judge is ADOPTED as the opinion of the District Court. It is further

ORDERED that the above-styled civil action be and hereby is DISMISSED with prejudice as frivolous and for failure to state a claim upon which relief may be granted. It is further

ORDERED that any and all motions which may be pending in this civil action are hereby DENIED. Finally, it is

ORDERED that a copy of this Memorandum Opinion and Final Judgment shall be sent by the Clerk to the Administrator of the Three Strikes List for the Eastern District of Texas.

**SIGNED this 31st day of January, 2011.**

7

MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE